# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JENNIFER OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-13-577-L |
| | ) | |
| CAROLYN W. COLVIN, acting | ) | |
| Commissioner Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Jennifer Owens (Plaintiff) seeks judicial review of the Defendant Acting Commissioner's (Commissioner) final decision denying her applications for disability insurance benefits and supplemental security income payments under the Social Security Act. United States District Judge Tim Leonard has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Upon careful review of the pleadings, the administrative record (AR) and the parties' briefs, the undersigned recommends the Commissioner's decision be affirmed.

## I. Administrative proceedings.

### A. State agency.

Plaintiff filed her applications with the Social Security Administration (SSA) in March 2009, alleging that various conditions – fibromyalgia;

depression; high blood pressure; irritable bowel syndrome; extreme fatigue; urinary tract infections; hives; pain, swelling, and numbness in her shoulders, back, legs, and feet – have prevented her from working since July 2, 2004.[1]  AR 17, 78-81, 136, 392-96.  The SSA denied Plaintiff's applications at the State agency level.  *Id.* at 47-51, 60-62, 400-03, 409-11.

### B.    Administrative hearing.

Plaintiff challenged that determination by requesting a hearing before an administrative law judge (ALJ).  *Id.* at 63.  In May 2012, Plaintiff appeared with Miles Mitzner, her counsel who also represents her on judicial review, and Plaintiff testified at her administrative hearing.  *Id.* at 450-67.

### C.    The Commissioner's final decision.

By written hearing decision, *id.* at 17-31, the ALJ found that Plaintiff – a married mother of three school-age children – suffers from obesity, diabetes mellitus, back pain, depression, anxiety, hypertension, and fibromyalgia but concluded that none of these impairments, alone or in combination, were presumptively disabling.  *Id.* at 20, 23-26.  The ALJ reviewed the medical evidence, evaluated the opinion evidence, and assessed the credibility of Plaintiff's subjective complaints before determining that she had the residual

---

[1]    Plaintiff was twenty-seven years old on July 2, 2004, her alleged onset of disability date.  AR 29.

functional capacity (RFC)[2] to perform work, albeit with restrictions. *Id.* at 20-29. He precluded her from performing any work exceeding the light exertional level;[3] any work requiring her to climb, balance, stoop, kneel, crouch, or crawl on more than an occasional basis; any work requiring her to use ladders, ropes, or scaffolds; any work requiring her to understand, remember, and carry out anything more than simple and some complex instructions; and any work requiring more than limited interaction with the public or more than superficial work-related contact with supervisors and co-workers. *Id.* at 26. Then, though he "assume[d] *arguendo* that [Plaintiff] is unable to perform past relevant work," the ALJ – upon application of the Medical-Vocational Guidelines or "grids" – found she remained capable of performing other available work in the national economy and, as a result, was not under a disability at any time from June 24,

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3] By agency regulation,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls.

20 C.F.R. §§ 404.1567(b), 416.967(b).

2006[4] through the date of the decision. *Id.* at 29-30.

The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision, *id.* at 6-8, and Plaintiff ultimately sought review of the Commissioner's final decision in this Court. Doc. 1.

## II. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff shows she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in

---

[4]    The ALJ declined to reopen Plaintiff's prior applications and set June 24, 2006, as the earliest possible onset date. AR 17. Plaintiff does not challenge that finding on judicial review. Doc. 16.

4

the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## III. Analysis.

### A. Plaintiff's claims of error.

Plaintiff raises three claims of error: (1) "[t]he ALJ performed no pain analysis and an improper Fibromyalgia analysis"; (2) "[t]he ALJ rejected the treating and consultative physician evidence improperly and gave great weight to the state agency (DDS) opinions, but then rejected their ultimate conclusions in favor of his own"; and (3) "[t]he ALJ acted as his own VE." Doc. 16, at 4, 9, 13.

### B. Standard of review.

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

### C.    Evaluation of Plaintiff's claims.

#### 1.    Whether the ALJ failed to perform a pain analysis and failed to properly analyze Plaintiff's fibromyalgia.

##### a.    The ALJ's pain analysis.

The record belies Plaintiff's contention that "[t]he ALJ failed to perform any pain analysis[5] in his decision." Doc. 16, at 4.[6]  Even a cursory review of the hearing decision establishes that the ALJ documented Plaintiff's allegation that she suffers from diabetes mellitus, fibromyalgia, irritable bowel syndrome, depression, and anxiety, all of which, with the exception of irritable bowel syndrome, were found to be severe medically determinable impairments. AR 20, 27.[7]  He then recounted her alleged side effects from medication:  nausea, diarrhea, sleepiness, insomnia, stomach upset. *Id.* at 27.  He took note of her claim that chronic diarrhea forces her to stay near a bathroom and of her testimony that "she lives in her room and she hurts all over." *Id.*

He found "that [Plaintiff's] medically determinable impairments could

---

[5]    But in the next section of her brief, Plaintiff disavows this argument by submitting "that the ALJ only conducted one element of the *pain analysis* . . . ." Doc. 16, at 9 (emphasis added).

[6]    According to Plaintiff, "it was not that the ALJ applied an improper test to evaluate [Plaintiff's] pain symptoms – no test was applied." Doc. 16, at 4.

[7]    The ALJ's statement that he "has not located the irritable bowel syndrome diagnosis for the relevant period" remains unchallenged in this Court. AR 27; Doc. 16.

reasonably be expected to cause the alleged symptoms . . . ." *Id.*  Thus, the ALJ found a "loose nexus between the proven impairment and the pain alleged." *Luna v. Bowen,* 834 F.2d 161, 164 (10th Cir. 1987).  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (At the second of "the three-step analysis set out in . . . *Luna* an ALJ . . . is required to . . . determine . . . whether . . . a pain-producing . . . impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus')." (quoting *Luna*, 834 F.2d at 163-64).

Next, the ALJ evaluated the credibility of Plaintiff's statements about the intensity, persistence, or functionally limiting effects of her pain and other symptoms "based on a consideration of the entire case record." AR 27.  He then set out his reasons for discounting Plaintiff's claims of disabling limitations.  *Id.* at 27-28.

Plaintiff's claim that "[t]he ALJ utterly failed to apply an appropriate legal analysis for [Plaintiff's] pain symptoms" is baseless.  Doc. 16, at 4.

### b.  The ALJ's analysis of Plaintiff's fibromyalgia.

Plaintiff's claim here is that the ALJ "performed . . . an improper Fibromyalgia analysis."  *Id.*  Her arguments in support of this claim are sometimes conflicting, often erroneous, but consistently convoluted. Thus, in an effort to reach every argument she raises, this report follows Plaintiff's briefing,

addressing her points in the order presented.

Plaintiff's overarching claim is that "[i]t is obvious [the ALJ] does not understand how to properly analyze Fibromyalgia." *Id.* at 5. To illustrate her argument, she first contends she has been given fibromyalgia diagnoses "by various sources, even the SSA doctor she was sent to." *Id.* She submits that Dr. Buffington, the SSA's consultative physician, "noted 16/18 positive fibromyalgia tender points." *Id.* A review of Dr. Buffington's report shows that he did complete a form labeled "Fibromyalgia Tender Points" which called on him to "circle all points the claimant states to be significantly painful with digital palpation of approximately 4 kg" and that he did note, as Plaintiff contends, "16/18 positive." AR 212. Further review, however, discloses that, despite having completed this form and despite Plaintiff's report of a history of fibromyalgia, Dr. Buffington did *not* diagnose fibromyalgia but, instead, joint pain. *Id.* at 209, 211.[8]

Next, Plaintiff – absent argument, supported or otherwise – states that "[t]he ALJ discounted [Plaintiff's] repeated complaints of flank pain as being related to a Urinary Tract Infection (UTI). (TR27)[.]" Doc. 16, at 5. She then immediately directs the court's consideration to "how the ALJ considered the

---

[8]   The ALJ's explication of the medical evidence of record shows that Plaintiff picked up her fibromyalgia diagnosis during treatment at Ministries of Jesus Christ from October 2004 through October 2007. AR 20.

above evidence[.]" *Id.*  Presumably, by the "above evidence," Plaintiff is referring to Dr. Buffington's findings because she then quotes the ALJ's determination that

> the findings of the August 2009 consultative physical examination (Exhibit C3F) appear to show much greater limitations in functioning than appears elsewhere in the claimant's reports of emergency room visits and clinic visits.  The [ALJ] notes no report of difficulty with ambulation or gait or tremor or tenderpoints in any of her emergency room or clinic treatment records.  Her psychological consultative examination of October 2009 (Exhibit C4F) states she ambulated with no evident difficulties.  There were no findings of tenderpoints on any of her emergency room exams, despite the claimant's report of past medical history including fibromyalgia.  The [ALJ] has given this consultative examination opinion some weight and reflective of the claimant's condition on that date.

AR 28; Doc. 16, at 5.  Plaintiff concludes that "[t]his flawed analysis is easy to debunk.  Most of those ER visits were for a different medical reason, not Fibromyalgia."  Doc. 16, at 5.

The portion of the decision Plaintiff quotes is the ALJ's consideration of the weight to give the findings of the consultative examiner, Dr. Buffington, with regard to Plaintiff's physical limitations (tenderness, decreased range of motion, painful range of motion, weak heel and toe walking).  AR 21, 28.  Plaintiff fails to explain how the ALJ erred through pointing out the lack of consistency between Dr. Buffington's findings and other medical evidence of record.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Nor does she explain why it

was improper for the ALJ to factor into his analysis the absence of tender point findings by other examining physicians who had been alerted to the fact that Plaintiff's medical history included fibromyalgia. Doc. 16, at 5.

Plaintiff's next contention in support of her premise that "[i]t is obvious [the ALJ] does not know how to properly analyze Fibromyalgia," is that "[t]he ALJ writes that there is no listing for Fibromyalgia so he used the Lupus listing." *Id.*[9] Then, despite having raised the issue, Plaintiff pivots, stating she "does not allege she meets a listing," and argues that "things changed six (6) days after the date of this decision." *Id.* She explains that at the time of the ALJ's decision – July 19, 2012 – the Commissioner's policy "was that Fibromyalgia could constitute a medically determinable impairment given the presence of certain specified signs and findings." *Id.* (internal quotation marks omitted). Then, according to Plaintiff, "as of July 25, 2012 [the Commissioner] codified a new Ruling, SSR 12-2p for the evaluation of fibromyalgia, essentially stating . . . that if a person has Fibromyalgia and can show that she has a minimum of 11 of 18 specified trigger points, she is *per se'* presumed to be

---

[9] The ALJ was correct. Fibromyalgia "cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment." SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012). Thus, at step three, the adjudicator "determine[s] whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis) . . . ." *Id.* Here, the ALJ looked to another immune system disorder, listing 14.02 for systemic lupus erythematosus. AR 24.

afflicted with the disease." *Id.* at 6.[10]

Plaintiff is mistaken. "[Fibromyalgia] is a [medically determinable impairment] when it is established by appropriate medical evidence." SSR 12-2p, 2012 WL 3104869, at *2. A finding of positive tender points is required, but so are additional findings, including a diagnosis of fibromyalgia. *See id.* at *2-3. Nonetheless, Plaintiff's rationale in raising the issue is elusive since she then immediately acknowledges that at step two, the ALJ determined that she suffers from fibromyalgia, a severe medically determinable physical impairment. Doc. 16, at 6. Thus, there is no issue in this case with respect to whether or not Plaintiff has fibromyalgia. Instead, the issue is with her claim that she is *disabled* by fibromyalgia.

Plaintiff complains the ALJ "obviously gave such diagnosis, but more importantly its effective impairments, short shrift by only allowing them *de minimus* weight by criticizing [Plaintiff's] claims of its' [sic] impairments upon her. (TR 27)[.]" *Id.* The undersigned cannot meaningfully decipher this contention, which conflates the distinct concepts of diagnoses, impairments, and,

---

[10] As the undersigned previously noted, Plaintiff sought Appeals Council review of the ALJ's decision. In denying the requested review on April 12, 2013, the Appeals Council stated that they had "applied the laws, regulations and rulings in effect as of [that] date . . . ." AR 6.

seemingly, symptoms.[11]

Plaintiff then maintains the ALJ "said there was no *objective* evidence supporting [Plaintiff's] claims and therefore she was not credible in making her complaints. (TR 27). In fact, so certain was the ALJ that [Plaintiff] needed objective evidence to support her claims of disability, the ALJ reiterated that

---

[11]    Plaintiff cites the ALJ's assessment of the credibility of her claim that she suffers from *disabling* symptoms resulting from her impairments. AR 27. An ALJ's credibility findings reflect his consideration of Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d them]." *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted). In making this determination, an ALJ should consider:

> the levels of medication and its effectiveness; the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts; nature of daily activities; subjective measures of credibility that are peculiarly within the judgment of the ALJ; motivation of and relationship between the claimant and other witnesses; and consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

An ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Here, the ALJ recited specific evidence-based findings – Plaintiff's exaggeration of limitations and diagnoses; her claims of extremely limited activity and never driving belied by reports of driving and of injuries sustained in greater levels of activity; her inconsistent compliance with medical follow-up and advice; the inconsistency of the objective medical evidence with the nonmedical testimony; her failure to obtain available insulin to control her diabetes – in discounting Plaintiff's claims of *disabling* limitations. AR 27. Plaintiff does not dispute these findings on judicial review. Doc. 16.

fact multiple times in his decision.  (TR 20-30)[.]"  *Id.*[12]  The record expressly

---

[12]   To the extent Plaintiff means that the ALJ actually made this statement, this is not the case.  Rather, the ALJ said, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record."  AR 27.  This is in keeping with SSA policy on fibromyalgia and the evaluation of a clamant's statements about symptoms and functional limitations:

> A.  First step of the symptom evaluation process.  There must be medical signs and findings that show the person has a [medically determinable impairment](s) which could reasonably be expected to produce the pain or other symptoms alleged.  [Fibromyalgia] which we determined to be a [medically determinable impairment] satisfies the first step of our two-step process for evaluating symptoms.

> B.  Second step of the symptom evaluation process.  Once a [medically determinable impairment] is established, we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work.  *If objective medical evidence does not substantiate the person's statements* about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.  As we explain in SSR 96-7p, *we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning.  We will make every reasonable effort to obtain available information that could help us assess the credibility of the person's statements.*

SSR 12-2p, 2012 WL 3104869, at *5 (emphasis added).

contradicts Plaintiff's claim: the ALJ based his decision to discount Plaintiff's credibility on his consideration of the entire case record, including her subjective complaints. AR 27.

Next, Plaintiff recognizes that the ALJ did state that he had considered Plaintiff's subjective allegations, but argues that "it is obvious that is not really a true claim because, while he may have *considered* the subjective allegations of Fibromyalgia, it is a fact that he also rejected them because he said [Plaintiff] was not credible." Doc. 16, at 7. She maintains that

> any consideration he may have given to the subjective allegations of [Plaintiff's] impairments relating to her Fibromyalgia were concomitantly thrown out the window due to her alleged lack of credibility. By doing so, any weight which might have otherwise given to [Plaintiff's] subjective complaints of her Fibromyalgia symptomology were also dismissed by the ALJ. It can't be both ways.

*Id.* In Plaintiff's view, "the ALJ dismissed any complaint or opinion that reflected an inability to work or that substantiated [Plaintiff's] Fibromyalgia symptomology." *Id.* She points to the ALJ's decision to give some, but little, weight to Plaintiff's husband's report of how her conditions limit her activities. *Id.*; AR 29, 128-35. She states, correctly, that the ALJ discounted her husband's opinions both because of his lack of medical training and because his statements were colored by spousal affection. Doc. 16, at 7; AR 29. To the extent Plaintiff is challenging this determination, the ALJ provided legitimate reasons for

reaching it.[13]

Finally, "[a]s further proof that the proper standards were not adhered to by this ALJ," Plaintiff ostensibly quotes the ALJ's statement that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted <u>as consistent with the objective medical evidence</u> . . . (TR 26)[.]" Doc. 16, at 8. She claims "that's just plain wrong [and h]ere, the subjective statements *alone* do determine a diagnosis of Fibromyalgia." *Id.* But Plaintiff omitted the words "and other evidence" from the end of her quote, and she again overlooks the fact that a *diagnosis* of fibromyalgia does not establish that the impairment is *disabling*. AR 26. The ALJ, pursuant to regulation, conducted a credibility assessment based on his consideration of the entire case record. The assessment remains virtually unchallenged here.[14] *Id.* at 27. And,

_____

[13]  SSR 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006), sets out how evidence from non-medical sources who did not see Plaintiff in a professional capacity should be handled:

> In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, . . . it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

[14]  Plaintiff submits that "[t]he other problem is that the ALJ only conducted one element of the pain analysis leaving the rest sorely lacking. Where, is

(continued...)

his determination that Plaintiff's claims of *disabling* limitations lacked credibility[15] did not rest on the ground "there was no *objective* evidence . . . to support her claims of disability." Doc. 16, at 6; *see* AR 27.

      **2.**      **Whether "[t]he ALJ rejected the treating and consultative physician evidence improperly and gave great weight to the state agency (DDS) opinions, but then rejected their ultimate conclusions in favor of his own[.]"[16]**

Notwithstanding the sweeping title of this claim of error, it distills down to Plaintiff's contention that the ALJ failed to properly assess the opinion of the SSA's consultative examining psychologist, Kara Rodgers, Psy.D. Doc. 16, at 9-13; AR 216-18. According to Plaintiff, the ALJ's "only mention of the report was in reference to physical complaints not mental." Doc. 16, at 11. But according to the record, the ALJ described the extent of Plaintiff's mental health treatment and Dr. Rodgers' report at length:

---

[14](...continued)
dosage and effectiveness; other treatments other than medication, etc? Partial analysis is error. We have no idea what the ALJ is thinking." Doc. 16, at 9. This suggestion of error is unavailing. As long as the ALJ provides the specific evidence he has relied on in assessing a claimant's credibility, "a formalistic factor-by-factor recitation of the evidence" is not required in the Tenth Circuit. *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000).

[15] Plaintiff ignores the fact that the ALJ gave partial credence to her subjective complaints of pain in rejecting the State agency medical consultant's opinions that she could perform work at the medium exertional level. AR 27-28.

[16] Doc. 16, at 9.

The claimant has been diagnosed with anxiety and depression and has been prescribed medication by treating physicians. In the claimant's most recent treatment in January 2012, she was given a prescription for clonazepam for anxiety (Exhibit C15F). The claimant's October 2009 psychological consultative examination (Exhibit C4F) yielded the diagnosis major depressive disorder, panic disorder, and generalized anxiety disorder, based on the claimant's self-report. She was considered capable of managing benefits in her own interest. The claimant reported she was not in any outpatient mental health treatment but was taking antidepressant medication. She reported sleeping or watching television, had lethargy during the day, more tearful. She maintained hygiene but spent a lot of time in her pajamas. She had feelings of nervousness and worry mostly over finances and health. She reported she was irritable and had difficulty getting along with others. She reported panic attacks, making her nauseous and heart race. She does not like to be in large crowds, large stores or a concert. Estimated intellectual functioning was in the average range and she graduated from high school. She had worked as a waitress, a nanny, a courier in an office, and in the shipping/receiving department. She was observed to have good eye contact, no psychomotor agitation or retardation, no difficulty walking, and average hygiene and grooming. Mental status exam showed she was fully oriented, able to follow a three-stage command, average working memory, good social judgment[.] Her mood was described to be euthymic. She was cooperative and expressed her thoughts clearly. She endorsed a history of abuse and family history of mental illness and substance abuse. She had ability to tract the course and flow of the consultative examination, concentrate, focus and displayed an adequate fund of knowledge.

AR 24-25. Plaintiff voices no objection to this summary of Dr. Rodgers' report by the ALJ (nor can she as she professes to be unaware of it). Doc. 16, at 9-13. Instead, she suggests that it was Dr. Rodgers' opinion that she "can't sustain work" and, as support, points to the fact that the doctor assessed a Global Assessment of Functioning (GAF) score of 48. *Id.* at 10. Because the ALJ failed

to discuss the GAF score or the weight he gave to it, Plaintiff claims reversible error. *Id.*

At the time of Plaintiff's mental status examination by Dr. Rodgers, clinicians used the GAF system to rate an individual's overall level of functioning. *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders*, DSM-IV-TR 32 (4th ed., rev. 2000). A GAF score between 41 and 50 was indicative of "[s]erious symptoms . . . [or] any serious impairment in social, occupational, or school functioning," such as an inability to hold a job. *Id.* at 34.[17]

Here, the ALJ's failure to specifically address the GAF score assessed by Dr. Rodgers was error, but not reversible error. Though not specifically referring to the GAF rating, the ALJ accepted Dr. Rodgers' impression that Plaintiff was severely impaired by depression and anxiety and found – noting her symptoms of those disorders – that the impairments caused her demonstrable limitations in daily living, social functioning, and concentration, persistence, or pace. AR 25, 26. Consistent with the findings of the State agency psychological expert, the ALJ accommodated these limitations by

---

[17] "[T]he new *Diagnostic & Statistical Manual of Mental Disorders*, 16 (5th ed., 2013) has discontinued [GAF score] use because of 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Krchmar v. Colvin*, ___ F. App'x ___, 2013 WL 6334883, at *2 n.2 (10th Cir. Dec. 6, 2013).

restricting Plaintiff to work where she would never have to do more than understand, remember, and carry out simple and some complex instructions and where she would experience no more than limited contact with the public and no more than superficial work-related contact with supervisors and co-workers. *Id.* at 25, 28. In so doing, the ALJ also considered Dr. Rodgers' report that Plaintiff's

> [m]ental status exam showed she was fully oriented, able to follow a three-stage command, [had] average working memory, had good social judgment[, was] cooperative and expressed her thoughts clearly [and] had ability to tract the course and flow of the consultative examination, [to] concentrate, focus and displayed an adequate fund of knowledge.

*Id.* at 25. Thus, the ALJ "identified specific medical evidence that indicated [Plaintiff's] symptoms did not have a severe limiting effect on [her] ability to work . . . ." *Harper v. Colvin*, 528 F. App'x 887, 892 (10th Cir. 2013) (concluding that the claimant was not prejudiced by the ALJ's failure to discuss a GAF score of 49). In the face of this evidence, the ALJ's specific consideration of the GAF rating of 48 "would not have helped [Plaintiff]" in this case. *Keyes-Zachary,* 695 F.3d at 1162-63 (applying a harmless error analysis to an ALJ's consideration of GAF scores).

### 3. Whether the ALJ was required to utilize a vocational expert at the fifth step of the sequential inquiry.

Here, Plaintiff maintains that the ALJ committed legal error by "act[ing]

as his own [vocational expert]" in determining that Plaintiff was not disabled at step five. Doc. 16, at 13. She relies exclusively on a provision in the SSA's Hearings, Appeals, and Litigation Law Manual (HALLEX) that addresses instances in which "[a]n ALJ may need to obtain a VE's opinion."[18] *Id. See* HALLEX I-2-5-50.A, 1994 WL 637380. She quotes the provision, underscoring language stating that this need to call a vocational expert *may* arise at step five in instances where the ALJ cannot decide the case under the grids because the claimant has both exertional and nonexertional limitations. Doc. 16, at 13.[19] Plaintiff then reproduces the ALJ's lengthy step five findings[20] and asks this Court to "[l]ook at all the ALJ had to write to get around not calling a VE." *Id.* Finally, she concludes, "With so many limitations in the RFC, when dealing with a claimant with both exertional and non-exertional limitations, the ALJ

---

[18] http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-5-50.html (last visited April 15, 2014).

[19] The Commissioner promulgated the Medical-Vocational Guidelines – the so-called "grids" – to assist with the burden at step five of the sequential process. *See* 20 C.F.R. pt. 404, subpt. P, App. 2. "The grids are matrices of the 'four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" *Daniels v. Apfel,* 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting *Heckler v. Campbell,* 461 U.S. 458, 461-62 (1983)).

[20] Plaintiff did not address these findings either as to their record support or as to their legitimacy under the cited regulations and rulings.

should have called a VE and it was error not to do so." *Id.* at 14.

The HALLEX provision is Plaintiff's sole authority for her claim of error. As the Commissioner maintains, this provision is permissive not mandatory. Doc. 18, at 15. By contrast, the next subsection in this same provision *is* mandatory, spelling out those instances in which the ALJ "must obtain a VE's opinion." *Id.*; *see* HALLEX I-2-5-50.B, 1994 WL 637380. The Commissioner is correct: "Plaintiff cannot show reversible error based on the ALJ's election not to follow a permissive provision contained in an agency manual." Doc. 18, at 15.[21] Plaintiff has failed to advance a legitimate, supported argument as to her third claim of error.

## IV. Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends the Commissioner's decision be affirmed.

The parties are advised of their right to object to this Report and Recommendation by May 7, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely

---

[21] Plaintiff did not directly challenge the ALJ's application of grid rule 201.21 as a framework for his decision. She made no supported argument that the nature of her nonexertional impairments *precluded* the ALJ from deciding the case under the grids, *i.e.,* that her nonexertional impairments would significantly erode the occupational base. Instead, she claimed only that the ALJ *should* have called a vocational expert because there were "so many limitations in the RFC . . . ." Doc. 16, at 14.

objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 17th day of April, 2014.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE